# City of Chicago v. Annie McNally.

## Gen. No. 12,792.

1. MEDICAL EXPERT—*what testimony of, competent.* Where a medical expert has testified that he can tell objectively that certain conditions exist, such as tenderness, despondency, irritability and pain, he may be permitted to testify thereto.

2. EXCEPTIONS—*what does not supply absence of, in bill of exceptions.* The absence of exceptions in the bill of exceptions is not supplied by an understanding with the court shown in such bill of exception that adverse rulings were to be taken as excepted to without specification. The exceptions must, notwithstanding such arrangement, be noted in the bill of exceptions.

3. REVERSAL—*when error must be plain to require.* Where two juries have passed upon a case and have found the same way, an error to reverse must be clear and palpable.

4. PHYSICAL EXAMINATION—*question of right to show refusal of.* It is held in this case under its facts, that it was not error for the court to refuse to permit the defendant to show the plaintiff's refusal to submit to a physical examination by experts employed by the defendant; but the question is not determined as a general proposition of law.

5. VERDICT—*when not excessive.* A verdict for $10,000 held not excessive where the plaintiff, a woman, was at the time of the accident about thirty years of age, was in good health and regularly employed in a commercial business and in consequence of the accident became incapacitated from continuing her usual em-

ployment, lost about thirty pounds in weight, and suffered injuries to her nervous system, etc.

6. NEWLY DISCOVERED EVIDENCE—*when not ground for new trial.* A motion for a new trial should not be granted, in order to afford opportunity for the production of newly discovered evidence upon a showing which is not positive as to the existence of the evidence, and which does not make it appear that diligence had been employed in seeking to obtain the same prior to the trial resulting in the verdict sought to be set aside.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed Ocober 8, 1906.

JOHN F. SMULSKI, for appellant; EDWARD C. FITCH and FRANK D. AYERS, of counsel.

WILLIAM E. RAFFERTY, for appellee; CHARLES J. TRAINOR, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment for $10,000 recovered by appellee against appellant, in an action for negligence, *per quod* it is averred the appellee was injured. The appellant pleaded the general issue to the declaration, and no question is raised as to the sufficiency of the pleadings. The evidence for the plaintiff (appellee here) tends to prove that April 7, 1901, between ten and eleven o'clock A. M., she and her sister-in-law were walking along the west sidewalk of Forty-second avenue, in the city of Chicago, which lies north and south, and came to a place in the sidewalk where a board was out, leaving a hole in the walk the dimensions of the absent board; that plaintiff was about to step over the hole, when her sister-in-law, who was walking west of her on the walk, stepped on the west end of a board of the walk, and the east end of it flew up and tripped the plaintiff, and she fell down and was injured.

The sidewalk was constructed by laying three stringers on the ground, running north and south, and laying planks about six inches wide across the stringers.  The sidewalk was about six feet wide and the height of its surface from the ground was from eight to ten inches.  The evidence, which is uncontradicted, tends to prove that the end of the most easterly stringer, which was nearest the roadway, had entirely rotted off from some distance back from the point where it originally connected with another stringer, and the most westerly stringer was partly rotten, and the middle stringer sound, so that if one stepped on the west end of a plank south of the hole, the east end of it would be likely to fly up.

It is shown by the evidence, and not contradicted by the defendant, that the sidewalk had been in bad condition for two months or longer, prior to the accident. The defendant offered no evidence in regard to the condition of the walk, and its counsel admit in their argument that it was in very bad condition and unsafe. The objections relied on, in argument, by defendant's counsel, for a reversal of the judgment, are, that the plaintiff did not exercise ordinary care; that the court admitted incompetent evidence and excluded competent evidence; that the damages are excessive; that the defendant had not a fair and impartial trial, and that the court erred in overruling defendant's motion for a new trial.

The question whether the plaintiff exercised ordinary care was submitted to the jury by instructions given by defendant's request, and we think the jury were warranted by the evidence in finding that she exercised ordinary care.  The objection that incompetent evidence was admitted, relates mainly to the testimony of Doctors Marshall, Adams and Skelton, who testified as medical experts.  Dr. Marshall, in testifying as to the plaintiff's condition on an occasion when he examined her, said "she seemed very de-

spondent,'' and that he so discerned objectively. The evidence was admitted over defendant's objection. The witness also testified that, in an examination of the plaintiff about a week before the trial, he found tenderness over the spine, just above the hips and in the region of the neck, and that she seemed to be very feeble and depressed and was quite irritable. Counsel for defendant moved the court to strike out the evidence as to tenderness, despondency and irritability, on the ground that these were subjective symptoms. The court overruled the motion. The witness had already testified that he could tell, objectively, whether there was a tenderness, and whether plaintiff seemed despondent, and we are not prepared to hold that it cannot be told, objectively, whether one is irritable. We find no reversible error in said rulings of the court.

Dr. Adams, who examined plaintiff several times, testified, among other things: ''Her mental condition was fair. The emotional features were quite pronounced. She cried easily upon examination and without cause. That was in the course of the examination I ascertained that.'' Defendant's counsel moved to strike out the testimony in relation to ''emotional features'' as being a subjective symptom, which motion the court overruled. The witness saw that the plaintiff cried easily, and he saw no apparent cause for this, and we cannot perceive how the defendant could be prejudiced by the testimony of the witness that plaintiff cried easily and without cause. Dr. Adams testified that the plaintiff suffered pain, and this is objected to, as being a purely subjective symptom; but the doctor testified that the feeling pain, on pressure to discover tenderness, if any, is evidenced by the involuntary wincing of the pupils of the eye when the patient is hurt, which is an objective sign, and which he observed. Doctor Adams was asked: ''What would be your judgment, Doctor, as to her ability to

perform manual labor?" to which question defendant's counsel objected, when the court said: "He may state what effect this diseased condition would have upon her muscular force or nervous energy, as to her ability to perform manual labor." The witness answered: "I think it would be hard for her to put forth a continued effort at a position requiring manual labor;" which answer defendant's counsel moved to strike out, and the motion was overruled. The evidence was competent as bearing on the question of damages. The same question was put to Doctor Skelton, who answered, in substance, that plaintiff had not the nerve power to work. Counsel, in their argument, object to the answer, but no exception is preserved. Doctor Adams testified, as the result of his examination of plaintiff, that "there was inability to write evenly and correctly with the right hand, as she had done previously," when defendant's counsel moved to strike out the words "as she had done previously," and the court ruled that if the witness knew of her writing prior to the accident, he might answer, and on the witness stating that he had seen envelopes and letters written prior to the accident, the court ruled that the evidence might stand, subject to be supplemented by proof that the letters, etc., seen by the witness were in plaintiff's handwriting. Subsequently, on plaintiff's attorney stating to the court that he could not produce such proof, the evidence of the witness as to plaintiff's ability to write was stricken out. There was no exception to the ruling of the court allowing the answer of the witness to stand on the condition mentioned, and we find no error in the ruling.

The following question was asked Doctor Marshall: "I will ask you whether or not the condition you found the patient in, in April, 1901, and found at the last examination, could have been caused by traumatism or a fall?" On objection made, the court said: "He may state what, in his opinion did cause it," which

question counsel for plaintiff adopted, and the witness answered: "In my opinion the condition that I found her in on April 7, 1901, must have been caused by some traumatism or injury." Q. "What do you mean by traumatism?" A. "Some injury." Q. "External violence?" A. "In this case, yes." It is objected that the admission of this evidence was erroneous, on the ground that the inquiry and answer involved the issue to be found by the jury. While we do not concur in this view, it is sufficient to say that no exception has been preserved to the ruling of the court. Counsel for defendant seek to avoid the want of exceptions in the record by reference to the following colloquy between the court and counsel:

Mr. Ayers, defendant's attorney: "Let me ask the court, when I raise an objection and the court rules upon it, is it necessary for me to take an exception in order to preserve my rights?"

The Court: "No, whenever you make an objection and the court rules against you, it will be understood that you are saving an exception."

This meant nothing more than that appellant's attorney, in order to preserve an exception to the court's ruling, would not be required to state, on the trial, that he excepted. It did not at all dispense with noting exceptions in the bill of exceptions, which appellant desired to preserve for review, and so we held in N. K. Fairbank Co. v. Nicolai, 112 Ill. App. 261 267. To avail of an exception, it must appear in the bill of exceptions. C., R. I. & P. Ry. Co. v. Town of Calumet, 151 Ill. 512.

In the course of the cross-examination of the plaintiff, the defendant's attorney commenced to ask her a question thus: "Would you be willing"—when the plaintiff's attorney objected. Both parties assumed that the question sought to be put was whether the plaintiff would be willing to submit to a medical examination. The court, after certain remarks by the court

and the attorneys, said: "I don't think the argument should be had in the presence of the jury;" when the attorney for the defendant said, "I don't care whether the jury is present or not." The court, the attorneys and the witness then went into the judge's chambers, when the following occurred:

The court: "I will let the record show that the question was asked in the presence of the jury, and the request was refused; also that the question was asked of plaintiff's counsel about a week or so ago, and that request was refused. Those questions may appear in the record as having been asked in the presence of the jury, and the requests for an examination were refused."

Mr. Ayers: "Let the record show that counsel for the defendant objects to the court ruling out the statement of counsel for the defendant that he, counsel for defendant, had submitted the names of several special-ists to counsel for the plaintiff to examine the plaint-iff some time previous to the trial, and that counsel for the plaintiff refused every one of them. The grounds upon which counsel urged the objection was because of the remarks of counsel in the presence of the jury; that counsel for the defendant should have made the request of counsel for the plaintiff out of the presence of the jury."

Mr. Rafferty: "I object to that going in."

Mr. Trainor: "That is not a part of the record here."

The Court: "It will be a part of the record, but it will not be anything that they can go before the jury on."

Mr. Ayers: "Oh, certainly not; my statement is there, and the court's statement, and my statement and my exception to the ruling will be shown."

The judge and the attorneys then returned to the court room, when the examination of the plaintiff proceeded as follows:

Mr. Ayers: "Miss McNally, are you willing to allow some specialist on nervous diseases, which you claim is your present physical ailment, to make a personal examination of you on behalf of the defendant, for the purpose of testifying?"

Mr. Rafferty: "I object."

(Objection sustained; exception by defendant.)

Mr. Ayers: "Are you willing to allow—"

Mr. Rafferty: "I think that has gone far enough, if the court please."

The Court: "Let him ask the question."

Mr. Ayers: "Are you willing to allow the court to select some specialist to make such an examination?"

Mr. Rafferty: "I object."

The Court: "The objection is sustained."

(Exception by defendant.)

Mr. Ayers: "Are you willing to allow any member of the jury to make such a selection?"

(Objection by plaintiff; sustained; exception by defendant.)

Mr. Ayers: "That is all."

We confess our inability to understand what the judge meant by saying, in chambers, that the record might show that the question whether plaintiff would submit to a medical examination was asked in the presence of the jury, and the request was refused. The record does not so show, but merely recites what the judge said, and shows affirmatively that the question was asked plaintiff, and was excluded on objection.

In Parker v. Enslow, 102 Ill. 272, and P. D. & E. Ry. Co. v. Rice, 144 ib. 227, the court held that the trial court had no power to compel a plaintiff, in such case as the present, to submit to a medical examination, from which ruling it necessarily follows that the plaintiff has the right to refuse to so submit. Counsel for the defendant say, in their argument: "She had the right to refuse to submit to an examination, but we think that the jury were entitled to know that she

did refuse, and that it was a fact which the jury might take into consideration, with the rest of the evidence.'' But defendant's attorney, in his argument to the jury, substantially told the jury that his client had been denied a medical examination of the plaintiff, saying: ''The city of Chicago would like to know from some other doctor what her medical condition is. You, gentlemen of the jury, want to decide this case right. You want to do justice to her. You want to do justice to the people of the city of Chicago. You, I don't doubt, would like to have the advantages of the testimony of some reputable physician from the other side of the case, who had examined her and could tell you whether or not they agreed; whether they find the same things which these three doctors tell you they find. But you are denied the advantage of their testimony in making up your minds in this case, just as the city of Chicago, through its attorneys, is denied that.''

On the plaintiff's attorney objecting to this statement, the court said: ''Oh, I think he can go on.'' The question presented is a new one, and has not been passed on by the Supreme Court, and we are not inclined to hold that the refusal of the trial court to permit the plaintiff to be asked, in the presence of the jury, whether she was willing to submit to a medical examination, is reversible error, especially in view of the foregoing statement made to the jury by defendant's attorney, with the approval of the court. There have been two trials of the cause, in each of which the verdict was for the plaintiff, and in such case error should be plain and clearly prejudicial to warrant a reversal.

It is next urged that the damages are excessive. The plaintiff is a single woman. She was about thirty years old at the time of the accident, about five feet and eleven inches in height, and at the time of the accident weighed 190 pounds, which

the evidence shows was about normal weight for one of her height. Before the accident she was in good health, and had never been sick, or required the attendance of a physician. She had worked steadily for the Banner Waist Company, in Chicago, six or seven years, except during vacations given to the company's employes. Since the accident the weight of the evidence is that she has not been able to do any work, except light household work, and she has done no work for which she received wages. At the time of the trial she weighed 160 pounds When the accident occurred plaintiff, with the assistance of two persons, walked a short distance on the sidewalk and there rested until a carriage was brought for her, in which she was carried to her brother's house, and assisted to bed, where she remained for six weeks, when, by the advice of her physician, she went to the home of her parents near Whitmore, Michigan. She describes her injuries thus: "While I was in bed I suffered severe pain across the small of my back and further up, between my shoulders, and in the back of my head and across my abdomen." "I had pains in my back continually since the injury, right across the small of my back, where this first pain pained me; also through my shoulders and at the back of my neck. There were times I got so nervous I could not control myself. I have to go and sit right down, any little excitement, and keep quiet. That will last maybe half an hour or an hour, and then I would have severe headaches. That states my condition with respect to nervousness. That manifests itself right in the back of my head, the pain in the back of my head more than in the front; and I get melancholy, sad and discouraged, and that is how I appear, and my body trembles." The testimony of Doctors Marshall, Adams and Skelton corroborates that of plaintiff as to her physical condition and her inability to work. Dr. Marshall, who was her attending physi-

cian from the date of the accident until the next June, and who examined her a week before he testified in the cause, said: "Judging from the time she had been ailing since the injury, and the means she had resorted to to improve her health, my judgment is that her condition, when I saw her last, is permanent. From what I saw, I believe that she could perform light manual labor, but my judgment is that she would be unable to continue for any length of time at anything that required close application to work." Dr. Adams examined plaintiff a year before the trial and again a short time before the trial. He testified: "I think she is not in as good condition to-day as when I examined her about a year ago. I think she has reached the limit of her improvement, and I do not believe she will ever get better." In reference to plaintiff's ability to work, Doctor Adams testified: "I think it would be hard for her to put forth a continued effort at a position requiring manual labor." Dr. Skelton's testimony as to the physical condition of the plaintiff, the permanency of her condition and her incapacity for work, is substantially the same as that of Doctors Adams and Marshall. Briefly stated, the case presented to the jury by the evidence was, that the plaintiff prior to the accident was a strong, healthy and cheerful woman, capable of earning her own living by active work, and who so earned it, and that by the accident, which resulted from the defendant's negligence, she became a permanent invalid. We cannot sustain the contention that the damages are excessive.

A motion for a new trial was made by defendant, one ground for which motion is newly discovered evidence. The alleged newly discovered evidence is set forth in the affidavits of seven persons. These affidavits are to the effect that the plaintiff was, in 1902, and has been since said time, in good health and able to work, and are, as we think, plainly cumulative

of the testimony of Dr. C. S. Lane and Edwin Beck-
with, witnesses for the defendant. The affidavit re-
lied on by defendant's counsel as showing diligence
in respect to the alleged newly discovered evidence, is
an amended affidavit of defendant's attorney, Mr. F.
D. Ayers, which is as follows:

"F. D. Ayers, being first duly sworn, deposes and·
says, that the diligence referred to in affiant's former
affidavit, filed herein on April 22nd, A. D. 1905, con-
sisted of the following acts or efforts on the part of
the defendant herein to secure the said newly dis-
covered evidence before the time of the trial of the
above cause; that on, to-wit, the 15th day of March,
A. D. 1905, Mr. F. W. Altpeter, one of the assistants
of the City Attorney's office of the city of Chicago,
went to Whitmore Lake, Washtenaw County, Michigan,
and went to the home of various and many persons
living in the vicinity of Whitmore Lake and made
inquiry in reference to the physical condition of Anna
McNally, the plaintiff herein, of such persons, and also
made inquiry as to what work or pleasure requiring
physical exertion said Anna McNally had indulged in
during the period of the spring of 1901 to the time
of the trial of the above cause; that said F. W. Alt-
peter was unable to obtain the facts and circumstances
set forth in the seven affidavits attached to and made
a part of affiant's original affidavit, and that said in-
formation did not come to the knowledge of this affiant,
or any one connected with the City Attorney's office,
until after the trial of the above cause, as set forth
in said original affidavit. Affiant states further that
said newly discovered evidence is necessary in order
to secure a fair and just trial in the above cause, and
that this affiant is now ready to produce said wit-
nesses at a subsequent trial of this cause, and affiant
believes that said evidence is material and necessary
for a proper trial and will change results of the
suit."

This suit was commenced April 23, 1901, the first
trial of it took place in February, 1903, and the last·
trial·commenced March 22, 1905, and March 15, 1905,

defendant, as appears from Ayers' affidavit, first commenced to seek information in respect to plaintiff's health and physical condition, although the defendant must have known when the declaration was filed, June 30, 1901, and February, 1903, when the first trial was had, the injuries which plaintiff claimed to have suffered. In Calhoun v. O'Neal, 53 Ill. 354, 358, the court say: "Again, we fail to see there was not negligence on the part of appellant in obtaining this evidence on the last trial. There had already been one jury trial, and it is probable that the same defense was interposed in the first as on the last trial. If so, and the affidavits fail to state it was not, then appellant was fully apprised that he would have to meet it on the latter trial, and he should have searched for the evidence he has since discovered. But he fails to state that he made any effort to find it, or to give any excuse for failing to procure it. This evidence was as completely in his reach, for aught we can see, before as after the latter trial. We are not prepared, therefore, to hold that he is free from negligence."

See, also, City of Chicago v. Hogan, 80 Ill. App. 345, 348.

The affidavit is evidently hearsay, although not so in form. It is evidently based on information derived from Mr. Altpeter, whose affidavit was not produced, nor its non-production accounted for. All that is stated in regard to what Altpeter did is, that he made inquiries of various and many persons living in the vicinity of Whitmore Lake, and that he was unable to obtain the facts and circumstances set forth in the seven affidavits. Such general statements are insufficient to show diligence. The court could not tell from either the original or amended affidavit of Mr. Ayers of whom Altpeter made inquiry, or that he "was unable to obtain the facts and circumstances." In C. & A. R. R. Co. v. Raidy, 203 Ill. 310, 316, the court say: "Affiant states that he made inquiry of a number of

persons from whom he hoped to receive information as to the whereabouts of appellee, and was unable, although he made diligent efforts to do so, to ascertain his whereabouts. This is the mere conclusion of the affiant, and gave the court no information upon which it could determine whether he was diligent or not. Nor does the affidavit state that he had any reason to believe or suspect that appellee was not injured as much as he would claim upon the trial, and that he was seeking his whereabouts and endeavoring to collect evidence to show the real extent of his injury." This language, and other language in the case cited, is applicable here. See, also, Heldmaier v. Taman, 188 Ill. 283.

It would seem that had diligence been used in apt time, the evidence might have been procured in time for the trial. The defendant did procure it after the verdict, and it is extremely improbable that the seven affiants, all of whom live in Michigan and whose affidavits were procured there, volunteered the matter contained in their affidavits without solicitation by the defendant.

The motion for a new trial was properly overruled, and the judgment will be affirmed.

*Affirmed.*