**Edward Guthrie, Appellee, v. The Empire Coal Company, Appellant.**

### Gen. No. 5,198.

1. MINES AND MINERS ACT—*when recovery for wilful violation authorized.* If one employed in a mine is struck by a train of pit cars which did not display a light as required by the statute, a recovery will be sustained.

2. MINES AND MINERS ACT—*when instruction as to quantum of proof not erroneous.* In an action charging a wilful violation of the Mines and Miners Act, *held*, that it was not error for the court to instruct the jury that it was not necessary that the plaintiff should establish his case by the evidence beyond a reasonable doubt; but that to entitle him to recover it was sufficient if he proved his case by a preponderance of the evidence.

3. EVIDENCE—*propriety of questions as to willingness to submit to physical examination.* Held, that the refusal of the trial court to permit counsel to ask a plaintiff,. suing for personal injuries, in the presence of the jury, whether he was willing to submit his body to an examination, was not reversible error.

4. VERDICT—*when not excessive.* Held, in an action on the case for personal injuries, that a verdict reduced by *remittitur* from $4,600 to $3,200, was not excessive where it appeared from the evidence that the plaintiff at the time of the accident weighed 170 pounds, was earning $2.50 per day and that much of the time he was able to do the work of a robust man and that as a result of the effects of this injury upon whatever diseased condition already existed in his system, he had not been able to work any since and has become a physical and mental wreck.

Action in case for personal injuries. Appeal from the Circuit

Court of Mercer county; the Hon. FRANK D. RAMSAY, Judge, presiding.   Heard in this court at the April term, 1909.   Affirmed. Opinion filed October 19, 1909.

CHURCH & CHURCH, WILLIAM JACKSON, GEORGE A. COOKE and JOHN M. WILSON, for appellant.

OSCAR E. CARLSTROM and N. J. GRAHAM, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was a suit brought by appellee to recover damages for injuries sustained November 9, 1906, as the result of being struck by a train of pit cars in appellant's mine where he was employed. The cause was before this court and the judgment reversed and the opinion filed August 10, 1908. 142 Ill. App. 332. At the former trial, the case was submitted to the jury upon a declaration containing two amended counts. The first charged a wilful failure to carry a conspicuous light on the front end of every trip or train of pit cars moved by machinery as required by section 21 (a) of the Mines and Miners Act, and that a train of pit cars violently struck appellee, threw him to the ground and injured him. The second count charged a wilful violation of said section in a failure to cut places of refuge in the side wall on the hauling way of the mine; and that while appellee was traveling on the hauling way, a train of pit cars approached and struck him in the back and injured him. On the former appeal, it was held that the court erred in excluding proof that there was adjacent to the main hauling way, a way provided in which the men could go to and from their work, and notices posted requiring them to use that way and not travel on the main hauling way; that appellee had been especially warned, and had promised that he would not go in the main hauling way again. Before the second trial, appellee dismissed the second count. There was a verdict for $4,600, a motion for a new trial was made,

and the court required a *remittitur* of $800. The motion for a new trial was denied, and judgment was entered for $3,800 from which the company appeals.

In the mine was a main south entry or hauling way on an inclined plain, and off this were a number of entries running east and west nearly opposite each other, and about three hundred and fifty feet apart. Off these entries were rooms; those off the east entries were driven to the north, and those off the west entries to the south. The east entries were numbered by odd numbers beginning at the shaft, and the west by even. Parallel with the south entry, and about forty feet west of it, was a way provided for the men to go to and from their work, variously called the man way, passing way and traveling way. The west entries extended to this man way. Over the south entry or main hauling way, cars were moved by cables attached to an engine located a little north of the shaft bottom. One cable, called the main rope running between the rails, was hitched to the north end of the train of cars or trip, and used to haul the loaded cars north to the shaft. Another cable at the south end of the trip called the tail rope, was used to haul in the empty cars, and ran over a drum at the mouth of the eleventh east entry, then passed along in the roof of the hauling way near the east side, over pulleys and back to the shaft. When cars were drawn into the mines, the force of the engine was applied to a drum to which the tail rope was attached, and the drum to which the main rope was fastened, ran loose, allowing the main rope to unwind. When loaded cars were drawn out, the process was reversed. Both cables were always in motion when empty cars were being hauled north to the pit. As a train of cars was approaching from the south, the cable in the roof was running the other way. At the mouth of the ninth east entry, where appellee was picked up after the injury, the roof was about five feet high, and the cable ran three or four inches below it.

From appellee's testimony, it is apparent that he was in an exceedingly feeble mental condition at the time of the last trial, and great stress is placed by appellant upon the apparent inconsistencies in his testimony. He was uncertain about many things and contradicted himself many times, but adhered to his statement that it was the trip car that struck him. A cousin of appellee's who apparently had not been on very good terms with his family, testified that she had a conversation with him soon after the accident in which she asked him if the car ran over his hands and he replied, "No," that if it had been the car, it would have taken it off; that it must have been the tail rope. Upon this testimony, and the fact that his hand was torn rather than crushed, appellant argues that appellee was not struck by the trip, but that he got hold of the tail rope and his hand was lacerated by coming in contact with the pulley. Appellee testified that the car struck him on the left side, and the evidence shows that the left side of his head, his left shoulder, hip, side, arm and hand were injured, and it is not likely that he would have received such injuries from taking hold of the cable running in the roof. The jury had a right to weigh the testimony of these witnesses, and, in our opinion, were justified in crediting the positive testimony of appellee, rather than that of a possibly prejudiced witness as to a statement alleged to have been made by appellee at a time of great physical suffering. When all his evidence is carefully considered, we think it clearly appears that appellee left his work in the ninth room off the eleventh east entry; that he went west on the eleventh east, and across the main hauling way to the man way provided by appellant, and then north some distance in the man way; that his light went out, and he being in total darkness became confused, left the man way, went across the main hauling way near the mouth of the ninth east, and was struck by a trip going north to the shaft without displaying the light required by the last sentence of section 21 (a) of the

Mines and Miners Act. Even though an employe should not travel along the main hauling way, as we held in our former opinion, yet employes had to be constantly crossing the main hauling way in passing to and from the various entries, and were not safe in so doing without the protection afforded by the light at the front of the trip. A miner's light might go out at any time and he would be in great peril if he chanced to stray from the man way to the hauling way, and trains ran thereon without the light required by statute.

Hugh Jones, a witness for appellee, testified in chief that he asked appellee what was the matter when he found him lying upon the ground after the accident and that appellee told him. On cross examination, appellant asked Jones what appellee told him, and the court sustained an objection thereto. This ruling was proper as the witness had not stated what appellee said. Indeed, if appellee had sought to prove what appellee said, appellant would no doubt have objected. Appellant afterwards called Jones and asked what appellee did say as to how he got to that place, and the question was answered, and counsel could have inquired further had he seen fit.

Appellee admitted that he had received sick benefits a few months before the injury, but he did not know how much or for how long a time. Appellant sought to prove by the books of the society, the length of time that he had received such benefits. The court held this proof not competent, but did hold that appellant could prove whatever appellee said. We see no error in this ruling.

Appellee was asked, in the presence of the jury, if he were willing to submit to an examination by physicians appointed by the court. On objection, the court ruled that appellant might ask him if he were willing to submit to an examination of his left side, left hand, and the left side of his head by physicians appointed by the court, in order that they might show

the results of their examination. Appellant refused
this offer, and the court sustained appellee's objections to questions as to his willingness to submit his
whole body to the examination of physicians in order
that they might testify, and this ruling is assigned
as error. No authority on this exact question has
been called to our attention. In City of Chicago v.
McNally, 128 Ill. App. 375, a suit to recover damages
for personal injuries in which the court refused to
allow counsel to ask plaintiff if she were willing to
submit to a physical examination by an expert selected
by the court, or by some specialist on nervous diseases,
or by some one selected by some member of the jury,
the court said, in passing on an assignment of error
on this ruling: "The question presented is a new
one, and has not been passed on by the Supreme Court,
and we are not inclined to hold that the refusal of the
trial court to permit the plaintiff to be asked, in the
presence of the jury, whether she was willing to submit to a medical examination, is reversible error."
On appeal in City of Chicago v. McNally, 227 Ill. 14,
the Supreme Court said: "The question whether or
not one may be asked, in the presence of the jury,
as to his or her willingness to submit to an examination has never been before us for decision. We think
the question in the form it was asked was properly
refused." We hold that the refusal of the trial court
to permit counsel to ask appellee in the presence of
the jury whether he were willing to submit his body
to an examination, was not reversible error, especially
as the offer of the court gave to appellant all the latitude to which it was entitled.

Section 33 of the Mines and Miners Act makes a wilful neglect, refusal or failure to do the thing required
by any section, clause or provision of the act, a misdemeanor punishable by fine or imprisonment or both.
The court instructed the jury that it was not necessary
that appellee should establish his case by the evidence
beyond a reasonable doubt; that to entitle him to recover it was sufficient if he proved his case by a

preponderance of the evidence. Appellant contends
that this was error, and relies upon The People v. Sulli-
ivan, 218 Ill. 419, to support this contention. The
Sullivan case was a prosecution by information to
enforce the penalty of an alleged violation of sections
33 and 272 of the criminal code. While our attention
has not been called to a case where this precise ques-
tion has been decided, we feel compelled to be con-
trolled by the rule announced in Woods v. Daily, 211
Ill. 495, and cases there cited. The Woods case was
an action on the case by appellee to recover damages
for an injury sustained to her means of support in
consequence of the death of her husband, alleged to
have been caused in whole or in part by the sale to
him of intoxicating liquors. There the court in-
structed the jury that a preponderance of the evidence
was sufficient upon which to base a verdict for the
plaintiff and the court in passing on an assignment
of error predicated thereon, said, "We do not view
that question as an open one in this court. In the
case of Hall v. Barnes, 82 Ill. 228, which was an action
by the wife under the Dram-shop act, the court said:
* * * 'While it is true the action is penal, and
the material allegations in the declaration must be fully
proven, yet it is not necessary the evidence should
exclude all reasonable doubt. It is sufficient if there
is a preponderance of evidence.' * * * This is an
action to recover damages, and not to recover a fine
or a penalty (Robinson v. Randall, 82 Ill. 521) and this
court, in that class of cases, has uniformly approved
instructions which have informed the jury the plaintiff
need only establish his case by a preponderance of
the evidence. * * * In Miller v. Balthasser, 78
Ill. 302, which was an action of trespass to recover
damages for criminal assault, the court, on page 305,
said: 'It is said, where the offense charged is of so
grave a character, more than a bare preponderance
of the evidence should be required to warrant a ver-
dict. This is not, however, a criminal or penal action,

but is merely a civil action, brought to recover damages for a personal injury. The judgment involves neither the life nor the liberty of the defendant, and we are aware of no authority that would require the plaintiff to establish her cause of action by more than a preponderance of the evidence.'' The suit at bar is to recover damages for personal injuries resulting from a wilful violation of a provision of the Mines and Miners Act, and not a criminal or penal action to recover or enforce the penalty for its violation, and the Sullivan case is not in point. We conclude that it was not error for the trial court to instruct the jury that it was sufficient to entitle appellee to recover if he proved his case by a preponderance of the evidence.

It is contended that the damages are excessive, and that appears to us to be the most serious question presented by this record. At the time of the accident appellee weighed one hundred and seventy pounds. At the last trial he weighed one hundred and eleven pounds. It is evident that he is now a physical and mental wreck. At the time of the accident, he was earning $2.50 a day. Some witnesses called him a strong, robust man. He had worked on a farm in the summer season doing hard work. It does appear, however, that five or six years before this injury, he had syphilitic sores upon his palate which necessitated an operation, which affected his speech, and that his hearing was bad; that during the year preceding that in which he was injured he had been treated for syphilitic troubles and that he was then in the third stage of syphilis. A physician examined him for admission into a life insurance company about a year before the injury and certified that he had no syphilis and was in good health. During the summer or early fall preceding the November in which he was injured he received sick benefits from a local beneficiary society, and there had been many times during the preceding five years when he appeared to be in bad physical condition. A physician testified that syphilis could be

developed by receiving a hard blow or severe injury so that one who might have lived for a great while would have the disease increased in violence by severe injury. The physicians did not testify that they told appellee that he had syphilis and it is conceivable that appellee did not know what the matter was with him. The proof, then, is to the effect that he weighed one hundred and seventy pounds when injured and was earning $2.50 a day and much of the time was able to do the work of a robust man, and that, as a result of the effect of this injury upon whatever diseased condition already existed in his system, he has not been able to work any since and is now a physical and mental wreck. While perhaps we might have been better satisfied had a smaller verdict been returned, yet, since the trial judge has reduced it to $3,800, we do not feel warranted in making a further reduction, or in granting a new trial because the judgment is excessive.

It is unnecessary further to discuss in detail the objections made to the ruling of the court on the instructions. Enough has been said elsewhere in this opinion to justify the court in giving appellee's instructions, and the important elements contained in appellant's refused instructions were embodied in its given instructions.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*