## Taekley Baziules, Administratrix, Appellee, v. O'Gara Coal Company, Appellant.

1.  MINES AND MINERALS, § 109*—*when statute requires trip of cars to carry lights.* Under section 15, div. "A," of the Miner's Act (R. S. 1911, J. & A. ¶ 7489), a trip of cars is required to carry

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

lights though not attached to a motor car, where they are put in motion by means of the motor car in making a flying switch from the single haulage track to a parting track.

2. MINES AND MINERALS, § 191*—*when instruction as to duty to maintain lights on trip cars proper.* In an action for the death of a miner resulting from being run over by a trip of cars in a mine, an instruction as to the duty of the coal company to have placed upon the front of the trip of cars a conspicuous white light, *held* to state the law applicable to the case.

3. MINES AND MINERALS, § 187*—*when instruction basing right to recovery on negligence not erroneous.* In an action for the death of a miner resulting from being run over by a trip of cars, where there was a count in the declaration alleging a violation of statute and a common-law count averring negligence, the giving of an instruction basing plaintiff's right to recover on negligence *held* not error because negligence was not averred in the statutory count.

4. LIMITATION OF ACTIONS, § 62*—*when amendment of declaration does not state new cause of action.* In an action for wrongful death, an amendment to a declaration changing the given name of one of the children of the deceased and adding the name of one that had been omitted, *held* not to state a new cause of action.

5. PLEADING, § 250*—*right to amend declaration.* Permitting plaintiff to amend his declaration after the evidence was all in, by changing the given name of one of the parties and inserting the name of a person which had been omitted, *held* not error.

Appeal from the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 1, 1914.

M. S. WHITLEY, for appellant.

J. B. LEWIS and ALPHEUS GUSTIN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellee as administratrix for the benefit of the next of kin of Joseph Baziules, who was killed while employed in one of appellant's coal mines, by being struck and run over by certain pit cars. There were two counts in appellee's declaration. The first charges that appellant wilfully propelled down an entry, through which appellee's

intestate was walking, a trip of pit cars, by machinery, without having on the front end of the pit cars a conspicuous white light as required by statute and that said cars struck, ran over and killed him. The second charged common-law negligence on the part of appellant in not furnishing appellee's intestate a reasonably safe passageway through said entry, and that while he was passing along said passageway in the exercise of due care and caution for his own safety, appellant, in disregard of its duty, carelessly and negligently propelled a trip of cars along said passageway, which struck him and caused his death. The accident is alleged to have occurred September 22, 1911. During the trial in January, 1913, appellee amended his declaration by changing the given name of one of the children of deceased and adding the name of one that had been omitted. Appellant filed a plea of the statute of limitations to the declaration as amended, to which a demurrer was sustained. The jury returned a verdict for one thousand five hundred dollars. Motions for a new trial and in arrest of judgment were overruled and judgment entered for that amount.

The following facts appeared upon the trial of the cause: About one-half mile from the bottom of the shaft in one of the entries of appellant's mine in question is a parting where the pit car tracks are double. On one track are hauled loaded cars that are pulled from the different rooms in the mine by mules. These cars are coupled together and hauled to the bottom of the shaft by an electric motor that is in charge of a motorman. When the loaded cars reach the shaft, the motorman picks up a trip of empty cars which he takes back to run on to the other track at the parting, that the drivers may hitch the mules to them and take them back into the mines to be reloaded. As the track approaches the parting it inclines slightly in that direction, and as the motorman returns with his trip of empty cars it is his custom to slack up as he approaches the switch. The cars are then uncoupled

from the motor while in motion. The motor then increases speed and runs in on the loaded track, the switch is then thrown and the trip of empty cars, by reason of the momentum already given them and the decline in the track, run in on the empty track. These two tracks are located at a distance from a foot to eighteen inches from the coal along the sides of the entry and the distance between the tracks is from six to twelve feet. The latter space is used for the mules in going back and forth and in passing through the entry, and it was necessary for the miners in passing through, either to go along the tracks or in the space between them. About four o'clock in the afternoon of the day in question, deceased had finished his work and was going through the entry on his way to the bottom of the shaft. As he reached the parting there were eight or ten cars on the load track and some five mules in the space between the tracks. He therefore started up the empty track and by the time he reached the middle of the parting, opposite where there were some of the mules, the motorman and his assistant reached the switch with a trip of eight empty cars, which he ran over onto the empty track in the usual way, the motor running onto the load track and stopping within three or four feet of the loaded cars standing thereon. The mules between the tracks were at the time making considerable noise and the trip of cars, which had no light on it, came down over the empty track, striking and running over Baziules and killing him. The only lights besides those on the miners' hats were one at the switch, some forty feet away, and the white light on the front of the motor, but the latter, when the motor stopped, was next to the loaded cars which were several feet above it.

The first count of the declaration sets up a wilful violation of that portion of section 15, div. "A," R. S. 1911 (J. & A. ¶ 7489), relating to coal mines, which provides: "A conspicuous white light must be carried on the front and a conspicuous red light or white signal

board on the rear of every trip or train of pit cars, moved ·by machinery.'' It is insisted by appellant that the facts in this case as shown to exist at the time of the injury to Baziules did not constitute a breach of the statute, because, first, the trip of cars were not at the time they struck Baziules being moved by machinery; second, because as there was a conspicuous white light on the motor, the law was therefore complied with and it was not necessary to have such a light on the trip of cars after they left the motor. The section of the law in relation to coal mines, above referred to, provides in the beginning that; ''On all single-track haulage roads, where hauling is done by machinery, which roads the persons employed in the mine must use while performing their work or travel on foot to and from their work, there shall be places of refuge, etc.'' Then comes a sentence providing for signalling on rope-haulage roads, which is followed by the provision in reference to the carrying of lights above set forth. Appellant argues that from a reading of the whole of division A, it appears that it is intended to apply only to ''single track haulage roads'' where hauling is done by machinery and that it does not apply to cases like this. It might be sufficient to say, strictly speaking, that the road in question was a single track haulage road, and the fact that there was a parting with two tracks or switches where loaded cars going to the bottom of the shaft and empty cars coming therefrom could pass each other would not change the character of the road. But apart from that consideration the provision requiring lights to be carried on the trip or train of pit cars is entirely separate and distinct from the first paragraph, which requires places of refuge on single-track haulage roads, where hauling is done by machinery, and is separated therefrom by a complete sentence referring to an entirely different matter, that is to signalling on rope-haulage roads; nor does it appear necessary that the motor should be attached to the trip of cars to require

a light to be carried thereon in case it or other machinery has furnished or is furnishing the motive power. That the cars which struck Baziules were moved by the motor, cannot be questioned. The motor had pulled them near to the parting where it was uncoupled from them and then moved rapidly on one track, while the cars, which had never lost their motion, were switched onto the other track, making a flying switch.

The principal object of the statute under consideration as indicated by its title and by the provisions thereunder is to provide for the health and safety of persons employed in coal mines. It is just as important for the protection of the coal miners, possibly more so, that a trip of cars which had been placed in motion by a motor and shunted down another track, should carry a light to warn the miners of its approach as that the motor itself should carry it. It would also appear that the danger of injury to a minor at the place where Baziules was killed would, by reason of the cars on both tracks and the mules running between and the consequent confusion, have been greater than in another place in the mine where there was but a single track. If full effect is to be given to the intention and the provisions of the statute, it must be held to apply to just such places and to such circumstances.

In the case of *Guthrie v. Empire Coal Co.*, 150 Ill. App. 530, the charge was a wilful failure to carry a conspicuous light on the front end of every trip or train of pit cars moved by machinery as required by section 21a of the Miners' Act then in force. In that case, empty and loaded cars were run back and forth between the bottom of the shaft and the parting by means of cables wound over drums, by power furnished by a stationary engine. A miner coming from his work in one of the rooms got on one of the tracks and was struck by a trip of cars going towards the shaft, not carrying the light required by the statute, and a recovery against the coal company was sustained by the court. The proofs concerning the facts relied

upon to sustain the first or statutory count of the declaration in this case are not controverted, and the only question is whether under these facts appellee was entitled in law to recover. We are of opinion that the case presented was clearly one which brought it within the provisions of the statute and that appellee had a clear right of recovery under that count. Complaint is made that the court improperly admitted certain evidence and excluded other evidence bearing upon the question whether deceased was at the time he was killed in the exercise of due care for his own safety. We think it unnecessary to consider this question, however, as under the uncontroverted proofs appellee was entitled to recover under the first count, and it was therefore immaterial whether he was or was not in the exercise of ordinary care for his own safety at the time he was run over and killed.

Appellant also questions certain instructions given on behalf of appellee, particular attention being paid to instructions No. 2, 4 and 12. The second instruction was based entirely upon the second or common-law count of the declaration and need not be considered. The fourth instructed the jury as to the law governing the placing of a conspicuous white light upon the front of every trip or train of pit cars moved by machinery in its mine, as above set forth, and told them if they found from the preponderance of the evidence, that on the day in question said coal company was moving a certain train or trip of pit cars in said entry, by machinery, then it was the duty of said coal company to have placed upon the front of said trip or train of pit cars a conspicuous white light. This appears to us to correctly state the law applicable to this case upon this question. The particular objection to the instruction made by appellant was that, as a matter of fact, the cars were not being moved at the time in question by machinery, which position, as we have above seen, is not well founded.

The objection to the twelfth instruction is that it told the jury that if they believed from a preponderance of the evidence the defendant was guilty of the negligence charged in the plaintiff's declaration or some count thereof, and that the death of Baziules was the natural consequence of such negligence, if such there was, and that such result might have been foreseen and reasonably anticipated, that then such negligence, if such there was, would be regarded in law as the proximate cause of such death. The claim of appellant is that this instruction is erroneous because no negligence was charged in the first count of the declaration at all. The cases relied upon by appellant to sustain this theory are all cases in which a violation of the statute is charged, and there was no common-law count in any of them. Here, however, there was a common-law count and the instruction refers to the negligence "charged in plaintiff's declaration or some count thereof," and while it might have been more carefully drawn it is not as a whole erroneous. Other objections are made in reference to the instructions given or refused, but no authorities are cited by appellant to support such objections and no reason appears to us why they should be sustained.

Appellant finally insists that the court erred in permitting appellee to amend his declaration, after the evidence in her behalf was all in, by changing the given name of one of decedent's children and inserting the name of another which had been omitted. The objection is especially urged in view of the fact that the amendment was made after the One-Year Statute of Limitations had expired.

In *Grace & Hyde Co. v. Strong*, 224 Ill. 630, which is relied upon by both appellant and appellee upon this question, leave was given the plaintiff at the close of the evidence to amend his declaration by stating correctly the first or Christian names of four sisters of the deceased alleged to be his next of kin, which had not been properly stated in the declaration. There-

upon defendant filed a plea of the Two-Year Statute of Limitations, to which the plaintiff demurred and the court sustained the demurrer. The Supreme Court held that the amendment was properly allowed; that it neither changed the cause of action nor stated a new one; that appellant was deprived of no legal right by allowing the amendment. In *Chicago City Ry. Co. v. Hackendahl,* 188 Ill. 300, more than two years after the cause of action had accrued, leave was given to file an amended declaration by inserting the names of the mother, brothers and sisters of the deceased. This was held by the Supreme Court to merely correct the imperfect statement of a good cause of action and that it did not state a new cause of action and was not susceptible to the plea of the statute of limitations. It would appear, therefore, that the trial court in this case did not err in permitting the amendment complained of and that appellant was deprived of no legal right by the action of the court in allowing the same.

The judgment of the court below in this case will be affirmed.

*Affirmed.*